IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case Nos. 3:09 CR 480 |
| | 3:14 CV 131 |
| Plaintiff, | |
| | MEMORANDUM |
| -vs- | OPINION AND ORDER |
| | |
| Dean Randleman, | JUDGE JACK ZOUHARY |
| | |
| Defendant. | |

## INTRODUCTION

*Pro se* Defendant Dean Randleman, a prisoner in federal custody, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 98). The Government opposes (Doc. 107), and Defendant has replied (Doc. 111). Defendant also filed a Motion to Disqualify this Court (Doc. 105), and a Motion for the Production of Transcripts (Doc. 106). For the reasons stated below, Defendant's Motions are denied.

## BACKGROUND

Following a three-day jury trial, Defendant was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Doc. 52). In October 2010, this Court sentenced Defendant to 222 months of imprisonment under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) (Doc. 80 at 1). Defendant, electing to proceed *pro se*, filed an appeal (Doc. 81 at 1). On August 22, 2012, the Sixth Circuit affirmed Defendant's conviction and sentence (Doc. 93). On October 18, 2012, Defendant filed a Petition for Writ of Certiorari with the United States Supreme Court (Doc. 96). The Supreme Court denied Defendant's Petition on November 26, 2012 (Doc. 97). On February 19, 2013, the Supreme Court also denied Defendant's Petition for Rehearing.

*Randleman v. United States*, 133 S. Ct. 1322 (2013). Defendant then filed the instant Motion on January 16, 2014 in which he raises twelve grounds for relief (Doc. 98-1 at 2).

### DISQUALIFICATION MOTION

Defendant's Motion to Disqualify this Court (Doc. 105) is denied. A judge is required to recuse himself or herself from a case "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. The reasons and facts Defendant sets forth in his affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger v. United States*, 255 U.S. 22, 33–34 (1921). The facts alleged must "convince a reasonable man that a bias exists." *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (internal quotation marks omitted). While an extrajudicial source for the bias is not required for recusal, the judge's "favorable or unfavorable predisposition" must be such that, "even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display [a] clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994). A bias stemming from the "judge's view of the law" is insufficient. *Story*, 716 F.2d at 1090.

Defendant contends this Court cannot fairly rule on his Section 2255 Motion because he alleges this Court abused its discretion by refusing to dismiss Defendant's trial counsel (Doc. 106 at 2). The Government points out that Defendant has not filed the required affidavit putting forth facts and reasons supporting his claim of bias. Construing Defendant's Motion as an affidavit, the request for recusal still fails. The only facts put forth by Defendant to justify recusal are that this Court presided over his trial and that he is now alleging this Court abused its discretion at that time. This

reason is insufficient. This Court can adequately apply the law to Defendant's claims in his Section 2255 Motion.

## STANDARD OF REVIEW

A sentencing court may entertain a Section 2255 motion filed by a person in federal custody, but only on the ground his sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 is the primary avenue for relief for federal prisoners "protesting the legality of their sentence." *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). "[G]rounds for relief under [Section 2255] are equivalent to those encompassed by [Section 2254] . . . under which relief is available on the ground that [a person] is in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. United States*, 417 U.S. 333, 344 (1974). Because Defendant is appearing *pro se*, the allegations in his Motion must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

## DISCUSSION

### Barred Claims: Grounds 4–6, 8–9, 11

Defendant has raised several claims that are procedurally barred, because he could have raised them on direct appeal but did not. When a defendant fails to raise an issue at trial or on direct appeal, the defendant waives that claim. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). "Therefore, in order to pursue this claim through a collateral attack on his sentence, he [is] required to demonstrate

3

in the § 2255 proceedings before the district court cause and prejudice to excuse the double default." *Id.*; *see also United States v. Frady*, 456 U.S. 152, 167 (1982).

In his fourth ground, Defendant alleges that the police department failed to establish and maintain a chain of custody for the gun found on Defendant (Doc. 98-1 at 27). Defendant claims the "weapon was left unsecured, unattended, unmaintained, and missing for several hours" (*id.*). Officer Harrod testified that after finding the gun on Defendant, he was not sure who transported the gun to the police station (Doc. 63, 6/1/10 Hr'g Tr. at 42). Officer Harrod testified that he put the gun into evidence at the station (*id.*). Defendant did not raise this issue on direct appeal.

Defendant also argues (in the context of his fourth claim) that the evidence was inconsistent and inaccurate because three police officers each described the gun differently (Doc. 98-1 at 28). Defendant did assert this argument on direct appeal and is now barred from doing so in his Section 2255 Motion. *See DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances.") (internal quotation marks omitted).

In his fifth ground, Defendant claims the Lima Police Department "knowingly, intentionally, and deliberately destroyed" three videos containing footage of his arrest that were favorable to his defense (Doc. 98-1 at 29). Detective Stechschulte testified at Defendant's trial about the videos (Doc. 73, 2Trial Tr. at 208–10). Defendant did not raise this issue on direct appeal.

In his sixth ground, Defendant accuses the prosecutor and three of the prosecution's witnesses of making "prejudicial, inflammatory, deceptive, poisonous, and misleading statements" to the jury regarding two "unrelated, unconnected, uncharged, and non-relevant crimes" (Doc. 98-1 at 31–32). Defendant claims that by repeating these statements to the jury several times, the prosecution stripped

4

away the impartiality of the jury (*id.* at 32). The prosecutor made the challenged statements in his opening statement (Doc. 72, 1Trial Tr. at 9–10). The challenged testimonial statements came from Officer Gillespie (*id.* at 21, 24), Officer Harrod (*id.* at 79), and Officer Schroeder (*id.* at 103). Defendant did not raise this issue on appeal.

In his eighth ground, Defendant alleges that Officer Gillespie performed an illegal *Terry* stop "when he pulled a handgun on [Defendant]" without identifying himself as a police officer (Doc. 98-1 at 35–36). Defendant claims Officer Gillespie lacked reasonable suspicion to perform this stop and later made false statements to establish probable cause (*id.* at 36). Officer Gillespie testified to wearing a tactical vest with police markings and a badge at the time he arrested Defendant (1Trial Tr. at 20). Officer Gillespie also articulated the events leading up to attempting to stop Defendant and subsequently arresting him (*id.* at 24–25). Officer Gillespie was speaking with a witness who called out, "There he is," and pointed at a figure who was running away, leading Officer Gillespie to run after the figure (*id.*). Upon entering the alley, Officer Gillespie found Defendant "exiting backyards" (*id.* at 25). Officer Gillespie testified that after he identified himself as an officer, Defendant ran (*id.* at 26–27). According to Officer Gillespie, when he caught Defendant the second time, he drew his firearm because he was concerned for his safety (*id.* at 29). Defendant did not raise this issue on direct appeal.

In his ninth ground, Defendant accuses the Government of presenting "hearsay testimonial statements" through two of its witnesses (Doc. 98-1 at 37). Defendant claims Officer Gillespie and Special Agent Bennett presented statements made by Officer Montgomery, Officer Dunham, Bethany Miracle, and Clifton Phillips without making "a reasonable 'Good Faith' effort to produce the declarants of these testimonial statements" (*id.* at 37–38). Officer Gillespie testified that he spoke

5

with Officer Dunham about a reported trespasser in the area (1Trial Tr. at 42-43). Officer Gillespie also testified that Officer Montgomery may have told him the suspects were wearing short-sleeved shirts (*id.* at 38). Finally, Officer Gillespie testified that Bethany Miracle called the police department to report a possible trespass, and when Officer Gillespie spoke with her, she gave him a description of the man she observed trespassing (*id.* at 44–46). Miracle also pointed out the suspected trespasser to Officer Gillespie when she saw him again (*id.* at 48). Special Agent Bennett testified that he had spoken to Clifton Phillips, but Special Agent Bennett did not testify about the content of that conversation, as this Court ruled it to be hearsay (2Trial Tr. at 22–23). These challenged statements were all made during cross-examination of the witnesses by defense counsel. Defendant did not raise this argument on direct appeal.

In ground eleven, Defendant claims the Assistant United States Attorney engaged in nineteen instances of prosecutorial misconduct (Doc. 98-1 at 40). The allegations include, among other things, that the prosecutor withheld evidence from a BCI lab report, presented false testimony by Officers Gillespie and Schroeder, prosecuted Defendant in federal court where Defendant asserts there is no jurisdiction, and withheld evidence regarding the trace performed on the firearm in evidence (*id.* at 31–34). Defendant also addressed a number of these allegations in other grounds for his Motion.

Defendant could have raised each of the above grounds for relief on direct appeal, because the grounds each existed and were known to Defendant at the time of appeal. Defendant submits no reason why he did not raise these issues on direct appeal, other than saying in his Section 2255 Motion that he did not have "the documents or trial transcripts to properly address issues" (Doc. 98). Defendant has not explained why he did not have the transcripts and documents to use for his direct

6

appeal. Defendant has shown no cause to sustain a collateral attack on his sentence based on issues he could have directly appealed. *See Elzy*, 205 F.3d at 884. Therefore, these claims are barred.

**Grounds 1–3, 7, 10, 12**

Grounds 1 and 10:  Federal Jurisdiction

In his first ground, Defendant alleges this Court lacked jurisdiction because Special Agent Bennett gave false testimony, leading to the establishment of "a fraudulent nexis [sic] to Interstate Commerce and Foreign Commerce to establish the false existence of a federal crime/offense for federal jurisdiction" (Doc. 98-1 at 10). In ground ten, Defendant alleges the Indictment was defective, invalid, unlawful, and unconstitutional, because Special Agent Bennett made false statements concerning the interstate nexus in the Complaint and his sworn affidavit (*id.* at 38–39). Defendant relies on Special Agent Bennett's trial testimony that a firearms trace could not be performed on the gun in evidence because it had no importer markings on it  (2Trial Tr. at 6–7). Defendant alleges this testimony contradicts Agent Bennett's affidavit and the facts alleged in the Complaint (Doc. 98-1 at 1–13). Defendant also believes this testimony proves there is no interstate nexus, thereby depriving this Court of jurisdiction over the matter (*id.* at 13).

While Defendant alleges that without an interstate nexus, this Court lacked jurisdiction over his prosecution, this Circuit has established "that the interstate commerce requirement, while referred to as a 'jurisdictional' element, does not affect subject matter jurisdiction, that is, the court's power to hear a case." *United States v. Riddle*, 249 F.3d 529, 536 (6th Cir. 2001). Instead, a challenge to the interstate commerce component is actually a challenge to the sufficiency of the evidence. *Id.* This Court instructed the jury that it had to decide whether the Government proved beyond a reasonable doubt that the gun "was manufactured in Poland and therefore had been shipped and transported in

7

interstate or foreign commerce" (2Trial Tr. at 110). Therefore, Defendant's jurisdictional argument fails.

Turning to a sufficiency of the evidence argument, Special Agent Bennett testified that a firearm trace was simply a means of tracking subsequent purchasers flowing from the manufacturer or importer of the gun (2Trial Tr. at 6). These importer markings appear only on guns manufactured in the United States after 1968 (*id.* at 7). Special Agent Bennett then testified that, based on his expertise, he was able to identify the gun as an FB Radom, which he knew to be "designed in Poland in or around 1930" (*id.* at 10). Viewing the evidence in a light most favorable to the prosecution, as this Court must, the evidence was sufficient for the jury to find the interstate commerce element of the crime was satisfied. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Grounds 3 and 7: Abuse of Discretion

In his third ground, Defendant alleges this Court "abused its discretion when it refused to dismiss defense counsel after several factors were presented to them by [Defendant] in court . . . show[ing] that there was a clear Conflict of Interest between [Defendant] and his counsel . . . ." (Doc. 98-1 at 22). Prior to trial, Defendant moved for the appointment of new counsel, which this Court denied at a hearing on the motion (Docs. 20–21, 87). According to Defendant, trial counsel failed or refused to inform this Court of alleged attempted intimidation by the U.S. Marshals, "that the prosecution was withholding exculpatory material evidence . . . [and] that the prosecution was suppressing exculpatory material evidence." (Doc. 98-1 at 22). Because this Court did not dismiss defense counsel, Defendant now alleges this Court abused its discretion and "aided in the Ineffective Assistance of Counsel" (*id.* at 23).

8

"Once a defendant expresses his dissatisfaction with counsel, the district court is obliged to conduct an inquiry into the defendant's complaint to determine whether there is good cause for substitution of counsel." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009). When determining whether a district court abused its discretion in not replacing trial counsel, four factors are considered: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

When Defendant moved for replacement counsel, this Court held a hearing (Doc. 87, 4/6/10 Hr'g Tr.). Defense counsel expressed that he had no trouble communicating with Defendant, that he and Defendant "understood each other," and that "there's been no issue with [Defendant] expressing his opinions" (*id.* at 6). Defendant told this Court that U.S. Marshals told his attorney that he was "the most dangerous man in Toledo" (*id.* at 9). Defendant told this Court that because his attorney had not brought this to the attention of this Court and because he felt his attorney had been intimidated or coerced by the Marshals' statement, he no longer had confidence that his lawyer would defend him to the best of his ability (*id.* at 11). When asked, defense counsel described the disagreement between himself and Defendant as being rooted in their fundamental disagreements about the Marshals' treatment of Defendant (*id.* at 17). Defense counsel also said he was not intimidated or coerced by the Marshals (*id.*). This Court also acknowledged it had substituted Defendant's trial counsel once before (*id.* at 7). Finally, the prosecution addressed Defendant's allegation that it was withholding evidence and responded that this concern could be dealt with at trial where a witness could testify regarding the challenged evidence (*id.* at 13).

This Court then considered the *Mack* factors in deciding whether to allow Defendant's newly-appointed counsel (*id.* at 19).  *See Mack*, 258 F.3d at 556.  This Court found that the timeliness factor weighed against Defendant, as the trial date was then less than three months away and progress toward that date had been made (Doc. 87 at 20–21).  This Court did inquire substantially into the matter, holding a hearing to decide the issue and considering the letters Defendant sent to this Court (*id.* at 21).  This Court even forwarded a letter from Defendant regarding the Marshals "to the appropriate people for appropriate action" and suggested the Marshals refrain from making any further comments regarding Defendant.  In short, this Court considered each of the factors set forth for making such a decision, basing its determinations on Defendant's letters and vocalized concerns, as well as defense counsel's opinion and this Court's observations.  Therefore, it cannot be said that this Court abused its discretion or that counsel was ineffective simply because this Court denied Defendant's request for new counsel.

Defendant also alleges this Court failed to enforce Federal Rule of Criminal Procedure 16 when it allowed the prosecution to present the BCI lab report, which was missing its first page (Doc. 98-1 at 25).  Defendant claims that in doing so this Court "allowed the prosecution to withhold and suppress this exculpatory material evidence" (*id.*).  Defendant claims this also enabled the prosecution to withhold evidence in eight other instances, as challenged under Defendant's seventh ground for relief  (*id.* at 25–26, 34).  Defendant claims the prosecution violated Rule 16 and *Brady* when it withheld information and evidence regarding the first page of the BCI lab report, the two pairs of gloves found on Defendant at the time of arrest, the shirt worn by Defendant at the time of arrest, and other tests performed on the weapon seized at the time of arrest (*id.* at 34–35).

In a separate hearing, the prosecution explained to this Court that the missing page from the BCI lab report was only a fax cover sheet and not part of the report itself (Doc. 87 at 13).  Further,

inspection of the lab report reveals it is numbered at the bottom and indicates the report, itself, is only two pages long, both of which were present and marked as evidence (Doc. 111-1 at 26–27). As for evidence of two pairs of gloves being suppressed, both pairs of gloves are clearly identified on the Lima Police Department's Property Release Form (*id.* at 12). The prosecution also did not suppress evidence of Defendant's DNA being tested against that found on the gloves, as that fact was addressed in a suppression hearing (Doc. 63 at 65). Finally, defense counsel questioned Officer Gillespie regarding the color of the shirt reportedly worn by a suspect in the home invasion as compared to that described by the witness reporting the alleged trespass (1Trial Tr. at 46–47). Officer Gillespie also testified that he believed Defendant was wearing a gray shirt at the time he was arrested (*id.* at 27). There is nothing in the record to indicate that Defendant's actual shirt color was different from that testified to or that the prosecution withheld evidence of the color of his actual shirt. Therefore, Defendant's seventh ground is denied as meritless.

Ground 12: Actually, Factually, and Legally Innocent

Defendant asserts that he is actually, factually, and legally innocent based upon his arguments against this Court's jurisdiction, the establishment of the interstate nexus, and his claims that Special Agent Bennett gave inaccurate statements "to falsely establish" probable cause (Doc. 98-1 at 44). This Court, has already determined that jurisdiction was appropriate and that the evidence supporting the interstate nexus was sufficient. This claim is also denied.

Ground 2: Ineffective Assistance of Counsel

For a claim of ineffective assistance of counsel, a defendant must ordinarily prove two components: (1) deficiency of counsel's performance, and (2) a "reasonable probability" counsel's deficient performance affected the outcome. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Under the first prong, the burden is on a defendant to "identify[] the acts or omissions of

11

counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Judicial scrutiny of trial counsel's performance must be "highly deferential." *Id.* at 689. Under the second prong, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Defendant alleges 48 instances of ineffective assistance of counsel (Doc. 98-1 at 5–11). Many of these claims have already been addressed in this Opinion and will not be recounted. Defendant claims trial counsel failed to: prepare for and present evidence at the suppression hearing; properly prepare for trial; object to the prosecution's opening statement; interview defense witnesses Stacie and Matthew Whitney; challenge the inconsistencies in Officer Gillespie's testimony; and inform the jury that Officers Harrod and Schroeder failed to write police reports concerning their participation in Defendant's arrest and transportation (*id.* at 17, 19).

However, there is nothing in the record and no facts in his Memorandum to support his assertions that his counsel's performance was deficient. While defense counsel did not put forth any evidence at the suppression hearing, he did file the motion, participate fully in the hearing by questioning the prosecution's witnesses, and filed a written response to this Court's questions posed to both parties at the end of the hearing (Doc. 63 at 87–88). And, after all, it was the Government's burden to show the evidence was admissible. As for his trial preparation, again there is nothing in the record and no supporting facts in Defendant's Memorandum to indicate defense counsel was ill-prepared. He participated fully by cross-examining the prosecution's witnesses, moving to suppress evidence, and presenting witnesses for the defense. Defense counsel also called witnesses Stacie and Matthew Whitney to testify about the events that occurred the night Defendant was arrested (2Trial Tr. at 38–53). Calling the Whitneys as witnesses undercuts Defendant's claims that defense counsel

never interviewed them. Finally, at trial, counsel adequately questioned Officer Harrod, who admitted he did not author an arrest report about Defendant (1Trial Tr. at 98–100). Defense counsel also questioned Officer Schroder regarding the report he wrote (*id.* at 109–11). Because Defendant has failed to show that trial counsel's performance was deficient, Defendant's claim of ineffective assistance of counsel is denied. Further, Defendant has failed to establish that any of the perceived errors were prejudicial.

## MOTION FOR PRODUCTION OF TRANSCRIPTS

Defendant requests transcripts of his Preliminary and Detention Hearing and of his Arraignment (Doc. 106 at 1). Defendant claims he needs these transcripts to support his Section 2255 Motion. An indigent defendant is entitled to free transcripts for proceedings brought under Section 2255 "if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal." 28 U.S.C § 753. Defendant has failed to establish these transcripts are relevant to any non-frivolous claim that he could bring under Section 2255. Therefore, this Motion is also denied.

## CONCLUSION

For the reasons above, Defendant's Motion to Disqualify (Doc. 105), Motion for Production of Transcripts (Doc. 106), and Motion to Vacate, Set Aside, or Correct Sentence (Doc. 98) are denied. This Court further finds Defendant has not made a substantial showing of the denial of a constitutional right and declines to issue a certificate of appealability. 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

April 30, 2014